IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SERGEI ALEKSEEV,  :  | |
|     Petitioner,  : | |
| : | |
|     v.  : | Civ. No. 26-0462 |
| : | |
| WARDEN, PHILADELPHIA  : | |
| FEDERAL DETENTION CENTER,  : | |
| PHILADELPHIA, PA, *et al.*,  : | |
|     Respondents.  : | |

**Diamond, J.**                                                                                             February 13, 2026

### MEMORANDUM

"Undocumented immigrant" Sergei Alekseev petitions for habeas relief, urging that his DHS detention violates the Immigration and Nationality Act and the Due Process Clause. See 8 U.S.C. § 2241. (Doc. No. 1.) The Government responds that Petitioner, as an "arriving alien," is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (Doc. No. 6.) Because the Government has misread the INA, it must afford Alekseev a bond hearing before an Immigration Judge. See Demirel v. Fed. Det. Ctr. Phila., No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025).

In Demirel (decided only three months ago), I set out the 288 district court decisions then addressing this detention issue nationwide—all but six rejecting the Government's position. (Id., at *4–13.) There is now conflicting appellate authority on the issue. Neither decision is controlling in this Circuit, however. Compare Buenrostro-Mendez v. Bondi, No. 25-20496, ⸺ F.4th ⸺, 2026 WL 323330 (5th Cir. Feb. 6, 2026), with Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048 (7th Cir. 2025). Significantly, since Demirel, even without such controlling authority, every member of this Court has repeatedly rejected the Government's interpretation of the INA. In the Appendix, infra, I have set out those 201 decisions, all granting "undocumented immigrants" habeas relief. These rulings do not appear to have persuaded the Government to

1

reconsider its position. Since the new year, these mandatory detention matters have comprised more than one in six civil cases filed in this Court.

I.    BACKGROUND

A Russian citizen, Mr. Alekseev apparently supported opposition leader Alexei Navalny and protested Russia's war in Ukraine. (Doc. No. 1 at 5; 17–20.) After multiple arrests, he learned that authorities would charge him with treason and fled from Russia. (Id. at 17–19.) On March 18, 2023, he entered the United States from Mexico and applied for admission. (Id. at 6.) According to Alekseev, "DHS issued a Notice of Custody Determination (Form I-286) stating that, pursuant to INA § 236 [8 U.S.C. § 1226] and 8 C.F.R. part 236," he "would be released on his own recognizance pending removal proceedings." (Id.) The Government determined that "he did not possess valid entry documents," and "deemed him inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I)." (Doc. No. 6 at 3; see Doc. No. 1 at 29.) Customs and Border Patrol served Alekseev with a Notice to Appear Form (I-862), which subjected him, as an "arriving alien," to "removal proceedings under Section 240 of the [INA]," and paroled him into the United States under § 1182(d)(5). (See Doc. No. 1 at 26.)

In February 2024, Alekseev's parole expired. (Doc. No. 6 at 3.) On January 21, 2026, after he appeared in Philadelphia for a scheduled ICE check-in, the Agency arrested Alekseev and transferred him to the Federal Detention Center, intending to initiate removal proceedings. (Doc. No. 1 at 6.) Alekseev promptly filed the instant Petition, seeking his release or, in the alternative, the scheduling of a bond hearing before an IJ within seven days. (See Doc. No. 1.) Alekseev also seeks a temporary restraining order: (1) prohibiting Respondents from moving him out of this District; and (2) directing his immediate release. (Doc. No. 2.)

2

The Government opposes the Petition. (Doc. No. 6.) The matter is fully briefed. (Doc. Nos. 1, 2, 6, 8.)

## II. LEGAL STANDARDS

I may grant habeas relief to any person "in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c)(3). "Habeas is a core remedy for unlawful executive detention" that is "regularly invoked on behalf of noncitizens." Munaf v. Geren, 553 U.S. 674, 693 (2008); INS v. St. Cyr, 533 U.S. 289, 301 (2001).

Although the Immigration Court may offer helpful guidance on matters like this one, I must exercise "independent judgment" in habeas matters. Loper Bright Enters. v. Raimondo, 603 U.S. 369, 385–86, 388 (quoting Skidmore v. Swift & Co., 323 U.S. 134, 139–40 (1944)); see Demirel, 2025 WL 3218243, at *1–2.

## III. RESPONDENTS

"The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242). See also 28 U.S.C. § 2243 ("The writ . . . shall be directed to the person having custody of the person detained.") Accordingly, "in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Padilla, 542 U.S. at 435.

Here, named Respondents are: the Warden of FDC Philadelphia (Jamal Jamison), the Acting Director of the ICE Philadelphia Field Office (David O'Neill), the Secretary of Homeland Security (Kristi Noem), the Attorney General (Pam Bondi), and the Executive Office of Immigration Review. (Doc. No. 1.) Because Jamison and O'Neill have the authority to effectuate

Alekseev's release, they are proper Respondents. See Demirel, 2025 WL 3218243, at *2 (citing Corona Diaz v. Olson, No. 25-12141, 2025 WL 3022170, at *1 (N.D. Ill. Oct. 29, 2025)). As EOIR is not a person, and Noem and Bondi are "remote supervisory official[s]," I will dismiss these them as Respondents. See Padilla, 542 U.S. at 435.

### IV. JURISDICTION

The Government argues that I must dismiss for want of jurisdiction. (Doc. No. 6 at 6–10 (citing 8 U.S.C. §§ 1252(b)(9), 1252(g), and 1252(a)(2)(B)(ii)).) I disagree.

Alekseev challenges the denial of a bond hearing, which is "independent of" and "collateral to" the removal process. See Demirel, 2025 WL 3218243, at *2–3 (citing E.O.H.C. v. Sec'y United States Dep't of Homeland Sec., 950 F.3d 177, 186 (3d Cir. 2020); 8 C.F.R. § 1003.19(d)). Accordingly, § 1252(b)(9), which directs final review of claims "arising from" removal proceedings to a court of appeals, does not bar this Court's review. See also Kourouma v. Jamison, No. 26-182, 2026 WL 120208, at *2–3 (E.D. Pa. Jan. 15, 2026) (Marston, J.) ("The Third Circuit's opinion in Khalil . . . does not change the Court's conclusion.") (citing Khalil v. President, United States of America, Nos. 25-2162 and 25-2357, 2026 WL 111933 (3d Cir. Jan. 15, 2026)). Moreover, because Alekseev does not challenge the commencement, adjudication, or execution of his removal (which may not even occur), § 1252(g) does not bar review. See Demirel, 2025 WL 3218243, at *3. Section 1252(a)(2)(B)(ii) also does not apply, as the Government's statutory detention power is not a matter of discretion. Id. (citing Zadvydas v. Davis, 533 U.S. 678, 688 (2001)).

### V. BASIS FOR DETENTION

The gravamen of this dispute is whether Alekseev's detention is mandatory under INA § 235(b) (8 U.S.C. § 1225(b)) or discretionary under § 236(a) (8 U.S.C. § 1226(a)). Id. Once again,

4

the law is clear: the Government detained Alekseev pursuant to § 1226(a), which affords him a bond hearing before an IJ. Id., at *10. Curiously, the Government does not address Alekseev's contention that, initially, "DHS issued a Notice of Custody Determination (Form I-286) stating that, pursuant to INA § 236 [8 U.S.C. § 1226] and 8 C.F.R. part 236," he "would be released on his own recognizance pending removal proceedings." (Doc. No. 1 at 6.) The Government nevertheless argues that because Alekseev's parole has expired, his Petition is different from the many cases where this Court has ruled that § 1226(a) applies. (Doc. No. 6 at 2–3.) I disagree.

CPB paroled Alekseev under INA § 212(d)(5) (8 U.S.C. § 1182(d)(5)). (Doc. No. 6 at 3; see Doc. No. 1 at 29.) The Government argues that since his parole has expired, "Petitioner was—and remains—an inadmissible arriving alien." (Doc. No. 6 at 10 (citing 8 C.F.R. § 1001.1(q) ("An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the [INA], and even after such parole is terminated or revoked.").) The Government reasons that "[s]ince Petitioner remains an 'arriving alien,' he is thus subject to mandatory detention under [§] 1225(b)(2)." (Doc. No. 6 at 10.)

Although, according to the Government, Alekseev is "subject to mandatory detention under the *plain language* of § 1225(b)(2)," that section includes no reference to arriving aliens. (Doc. No. 6 at 2 (emphasis added).) Rather, it provides that:

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

§ 1225(b)(2) (emphasis added).

I have discussed in Demirel, and my colleagues have repeatedly ruled, that the Court is "not prepared to read this part of § 1225(b)"—an alien seeking admission—"out of existence." Demirel, 2025 WL 3218243, at *4 (citing United States ex rel. Polansky v. Exec. Health Res., Inc.,

5

599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning.")); see also Garcia Zambrano v. Jamison, No. 26-0760, Doc. No. 6, at 3 (E.D. Pa. Feb. 10, 2026) (Henry, J.) ("it would be strange to say that [petitioner] seeks to be 'admitted' to a place he had already entered"); see Vasquez-Rosario v. Noem, No. 25-7427, 2026 WL 196505 (Kenney, J.) (petitioner "who has been living in the United States for several years cannot be characterized as 'seeking entry' consistent with the ordinary meaning of that phrase,'" even after the petitioner's parole had expired) (internal citations omitted) (collecting cases); Zirakashvili v. Jamison, No. 26-0629, Doc. No. 6 (E.D. Pa. Feb. 11, 2026) (Scott, J.) (same). Moreover, § 1225(b)(2) "presupposes an 'examining immigration officer' making a determination in the context of examining an alien 'seeking admission,' not an interior arrest long after parole has permitted physical entry." Mantilla Marcano, No. 26-0239, Doc. No. 5, at 7.

Even if Alekseev meets § 1001.1(q)'s definition of an "arriving alien," the Government does not purport to detain him under § 1225(b)(1)(A)(i), the "Arriving Aliens Provision." See Vasquez-Rosario, 2026 WL 196505, at *3. Nor could it do so, because § 1225(b)(1) governs expedited removal proceedings that have not yet occurred. Id. Indeed, "the specific type of form that [Alekseev] was issued provides further evidence as to how DHS viewed [him]." Id. at 6. As in Vasquez-Rosario, Alekseev was issued a Notice to Appear Form (I-862), subjecting him to "removal proceedings under Section 240 of the [INA]"—not a "Notice and Order of Expedited Removal" Form (I-860) for noncitizens subject to expedited removal proceedings under "section 235(b)(1) of the [INA]." Id. at 6. (See Doc. No. 1 at 26.) "Therefore, from [March 18, 2023] to [January 21, 2026], DHS did not treat [Alekseev] as if he were subject to mandatory detention and expedited removal proceedings." Id.

In these circumstances, Alekseev is entitled to a bond hearing before an IJ.

## VI.     CONCLUSION

Pursuant to 8 U.S.C § 1226(a), I will grant Alekseev's Petition to the extent that he seeks an Order requiring a bond hearing before an Immigration Judge and an appeal to the Bureau of Immigration Appeals, should an appeal be necessary.  In light of my decision, I will not address Alekseev's due process claim, and will deny his Motion for a Temporary Restraining Order.

An appropriate Order follows.

**BY THE COURT.**

*/s/ Paul S. Diamond*
**PAUL S. DIAMOND, J.**